Joseph A. ROMANO,
Plaintiff–Appellant,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, et al., Defendants–Appellees.

No. 87–3069.

United States Court of Appeals,
Fifth Circuit.

Dec. 29, 1987.

---

**2.** The district court also awarded Denham $500,-000 for pain and suffering.

Stephen J. Caire, Covington, La., for plaintiff-appellant.

Robin Rosenbluth, Whitney Adams, Marshall F. Hanbury, Washington, D.C., for Amicus–Commodity Futures Trading Com'n.

William R. Forrester, Jr., Dirk van Ausdall, Lemle, Kelleher, Kohlmeyer, Hunley, Moss & Frilot, New Orleans, La., for defendants-appellees.

Before RANDALL and DAVIS, Circuit Judges and FELDMAN [*], District Judge.

FELDMAN, District Judge:

This appeal is taken from the district court's dismissal of various securities and commodities violations claims and denial of class certification. We affirm the district court.

## I. BACKGROUND

Joseph A. Romano brought this action on behalf of himself and other "involuntary" Merrill Lynch Ready Assets Trust customers alleging violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission. In connection with his claims of commodities churning [1] and impermissible trading on margin, Romano sued a host of Merrill Lynch & Co. affiliates: Merrill Lynch, Pierce, Fenner & Smith is a wholly-

[*] District Judge for the Eastern District of Louisiana, sitting by designation.

1. Churning occurs when a broker "enters into transactions and manages a client's account for the purpose of generating commissions and in disregard of his client's interests." *Miley v. Oppenheimer & Company,* 637 F.2d 318, 324 (5th Cir.1981).

owned brokerage subsidiary; Merrill Lynch Ready Assets Trust is a "no-load" money market mutual fund which invests primarily in short-term money market securities;[2] Merrill Lynch Assets Management, Inc. is the investment manager for the unincorporated trust and other Merrill Lynch mutual funds. Mr. Romano also named two wholly-owned subsidiaries, Merrill Lynch Commodities, Inc.[3] and Merrill Lynch Futures, Inc. Thereafter, he amended his complaint to add violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 *et seq.*

Although appellant's arguments here are as elusive as were his assertions of misconduct before the district court, certain facts emerge.

Romano opened a commodities trading account with Merrill Lynch, Pierce, Fenner & Smith (MLPF & S) on March 12, 1981 with a deposit of $10,000. He claims MLPF & S then placed his $10,000 in an interest-bearing money market account, Merrill Lynch Ready Assets Trust (MLRAT), but did so without authorization from him. What followed was a series of deposits and withdrawals from the Ready Assets account for investment in the silver futures market on appellant's behalf. Both types of transactions, the silver commodities trading and the associated deposits and withdrawals from MLRAT[4], occurred between March 1981 and April 1983. Apparently dissatisfied with the results of his trading, appellant ordered the liqui-

dation of his account and brought this suit. In addition to the 10b–5, RICO and churning[5] violations, appellant alleged that MLPF & S breached its fiduciary duty by failing to disclose its own market activity in silver futures contracts. Furthermore, appellant claimed that MLPF & S account executives made unauthorized commodity sales and purchases, failed to properly execute appellant's orders, and failed to disclose a complete listing of activity in appellant's account.

Several rulings followed in motion practice.

■ Defendants Merrill Lynch Ready Assets Trust and Merrill Lynch Assets Management moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. On December 6, 1985, the district court granted summary judgment in favor of MLRAT and MLAM because Romano could show no loss from the Ready Assets transactions, and failed to state a basis for liability for the commodities losses alleged. At the same time, the court granted partial summary judgment in favor of MLPF & S, Merrill Lynch Futures, and Merrill Lynch Commodities as to certain of the 10b–5 claims which were prescribed on the face of the complaint.[6] In addition, the trial court denied class certification of this action. On July 1, 1986, after ample time for discovery, the district court dismissed the prescribed 10b–5 and RICO claims for failure to show fraudulent con-

---

2. The parties accept the general description of each entity's role in the Merrill Lynch organization as set forth in *Gartenberg v. Merrill Lynch Asset Management, Inc.,* 528 F.Supp. 1038, 1041 (S.D.N.Y.1981), *aff'd.,* 694 F.2d 923 (2nd Cir. 1982), *cert. denied,* 461 U.S. 906, 103 S.Ct. 1877, 76 L.Ed.2d 808 (1983).

3. On January 4, 1983, Merrill Lynch Commodities, Inc. changed its name to Merrill Lynch Futures, Inc.

4. It is undisputed that the Ready Assets transactions are technically securities transactions.

5. As the district court noted, a churning allegation makes little sense in the context of the Ready Assets transactions. Conspicuously absent is an itemization of the deposits and with-

drawals from the Ready Assets account which would support a claim for churning. Indeed, the gist of Romano's complaint with regard to his Ready Assets account was that his deposit was placed in an interest-bearing account without his authorization, in lieu of being frozen in a noninterest-bearing account, pending investment in the silver futures market. In any event, not surprisingly, appellant's claims based on Ready Assets transactions must fail due to his inability to allege any damage resulting from MLPF & S' action.

6. The district court specifically gave appellant the opportunity to show fraudulent concealment of any alleged deceitful conduct which would operate to toll the statute of limitations. *See Sargent v. Genesco, Inc.,* 492 F.2d 750 (5th Cir. 1974).

cealment[7], 638 F.Supp. 269. Dismissal of the RICO claims was further appropriate because appellant failed to allege predicate acts upon which a pattern of racketeering activity could be based.[8] On September 12, 1986, the district court dismissed those commodities churning claims which had prescribed due to Romano's failure to show lack of notice of the commodities violations. But the court purposely declined to specify which claims had prescribed in order to give Romano still one more opportunity to develop proof at trial. After trial on the merits, the court found that Romano had failed to prove either his commodities churning claim or his breach of fiduciary duty claim. The district court then granted defendants' motion to dismiss based on Federal Rule of Civil Procedure 41(b). This appeal followed.

## II. ISSUES ON APPEAL

Romano raises the following issues on appeal: (1) Whether the dismissal of Merrill Lynch Ready Assets Trust and Merrill Lynch Assets Management was appropriate; (2) Whether the district court erred in applying the statute of limitations to appellant's churning claims; (3) Whether the evidence supported the district court's finding that no churning violation occurred; (4) Whether the district court erred in finding that defendants had not breached any fiduciary duty owed to Romano; and (5) whether denial of class certification was proper.

## A. DISMISSAL OF MLRAT AND MLAM

■ The granting of summary judgment pursuant to Rule 56[9] of the Federal Rules of Civil Procedure is appropriate when, viewed in the light most favorable to the opposing party, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Phillips Oil Company v. OKC Corporation,* 812 F.2d 265, 272 (5th Cir.1987). On review, this Court applies the same legal standard in determining whether summary judgment was proper. *Id.* The Supreme Court instructs that the inquiry involved in ruling on a motion for summary judgment "necessarily implicates the substantive evidentiary burden of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Therefore, "the judge must view the evidence presented through the prism of the substantive evidentiary burden" that the parties would bear at trial. *Id.,* 106 S.Ct. at 2513.

■ After careful review of the record before us, we conclude that the evidence presented, even viewed in the light most favorable to appellant, is not "such that a [factfinder] ... could reasonably find" for Mr. Romano. 106 S.Ct. at 2514. Given the uncontroverted description of each Merrill Lynch entity's role in the transactions which form the subject of the complaint, it is clear that neither the Ready Assets Trust nor the Assets Management division could be liable for the losses at issue. It is uncontested that MLPF & S maintained two accounts on appellant's behalf: (1) account number 594-18328, the Ready Assets account into which appellant's funds were deposited pending investment in the com-

---

7. While the district court's application of a one-year prescriptive period to RICO claims is now outdated in light of the Supreme Court's recent pronouncement, *Agency Holding Corporation v. Malley-Duff & Associates, Inc.,* — U.S. —, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987), the error is harmless in view of appellant's failure to properly allege a RICO cause of action.

8. The district court found that because commodities trades are not securities transactions, the claims based on churning the commodities account could not form the predicate acts of RICO violations. In view of the complete failure of proof on churning, we need not reach the correctness of the court's ruling which, we note, was not seriously attacked on appeal in any event. Since Romano could show no damage flowing from the Ready Assets transactions, his securities claims were similarly deficient for RICO purposes.

9. Rule 56(c) provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

modities market, and (2) account number 594–18456, the commodities account. Romano did not, and in fact could not, identify any loss resulting from the purchase or redemption of Ready Assets shares.[10] Instead, he could only allege and prove losses flowing from the commodities transactions. The record is clear that neither MLRAT nor MLAM was in any way even remotely involved in Mr. Romano's silver futures trades. Mr. Romano's investment activity in the commodities market was handled exclusively by account executives for MLPF & S, Merrill Lynch Futures, and Merrill Lynch Commodities. Given the absence of "evidence favoring the nonmoving party [sufficient] for a [factfinder] to return a verdict for that party," summary judgment was clearly appropriate. 106 S.Ct. at 2511.

## B. PRESCRIPTION AND THE CHURNING CAUSE OF ACTION

On defendants' motion for summary judgment, the district court dismissed as prescribed that portion of the commodities churning claim based on transactions that occurred prior to March 1983.[11]

This Court, like the district court, acknowledges that the statute of limitations does not begin to run until "the aggrieved party has either actual knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *First Federal Savings & Loan Association of Miami v. Mortgage Corporation,* 650 F.2d 1376, 1378 (5th Cir.1981). A churning cause of action may be particularly difficult to detect if the customer is an unsophisticated investor:

... because churning is conduct which is not common to the experience of the ordinary individual, it is consequently not easily recognizable to unsophisticated investors.

*Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 494 F.2d 168, 172 (10th Cir.1974).

Because of the character of the offense, churning is not limited to a single transaction. As we have stated before:

Churning is a unified offense: there is no single transaction, or limited, identifiable group of trades, which can be said to constitute churning. Rather, a finding of churning, by the very nature of the offense, can only be based on a hindsight analysis of the entire history of a broker's management of an account and of his pattern of trading that portfolio, in comparison to the needs and desires of an investor.

*Miley v. Oppenheimer & Company,* 637 F.2d 318, 327 (5th Cir.1981).

Therefore, it is apparent that in applying the limitations period to a churning cause of action, one must consider the entirety of the transactions in question and the degree of investor sophistication. Our review of the record reveals no evidence that Romano lacked notice of his churning claims so as to toll the prescriptive period. Indeed, the evidence points the other way.

Mr. Romano received monthly statements reflecting all account activity during each preceding month. Merrill Lynch also regularly sent him confirmation notices of trading in his commodity account. He received open order confirmation notices and commodity margin call reminders. We recognize that receipt of such statements alone does not constitute notice of a churning claim as a matter of law:

Several courts have held that the mere receipt of confirmation slips recording the date of every security transaction does not in itself provide sufficient notice of churning activity to alert an investor otherwise unaware that the frequency and volume of such trading might be considered excessive. 494 F.2d at 172.

---

**10.** Since the Ready Assets Trust was an interest-bearing account, it appears that Mr. Romano actually realized some gain from MLPF & S' investment decision.

**11.** Romano does not attack the district court's application of a two-year limitations period as guided by Louisiana Securities Laws and the Commodity Exchange Act, 7 U.S.C. § 1 *et seq. See also* 7 U.S.C. § 25(d).

However, in this case and on this record we find that Romano was sufficiently apprised of the brokers' activities.[12] Mr. Romano was not an unsophisticated investor who was caught unaware of the significance of his commodity account activity. We stress that he himself directed and controlled his nondiscretionary account. When given ample opportunity[13] to present facts tending to show ignorance or confusion regarding his churning claim, Romano could only make the naked assertion that he was unaware of the violation as of July 1983. Clearly, a party opposing summary judgment cannot rest on such a conclusory allegation when it is unsupported by facts placed before the trial court. We noted in *Fontenot v. Upjohn Company,* 780 F.2d 1190, 1195–96 (5th Cir.1986):

> Absent evidence, direct, circumstantial, or inferential, that would create a genuine issue of fact, and absent any suggestion concerning the utility of additional time for further discovery, the motion should be granted.

*Id.* at 1196. Thus we find that, on these facts, the district court's grant of summary judgment on the prescription issue was proper.

## C. NO EVIDENCE OF CHURNING VIOLATION

■ The essential elements of a claim for churning are certain and have been clearly articulated. To prevail on a churning claim the investor must prove that: (1) the trading in his account was excessive in light of his investment objectives; (2) the broker in question exercised control over the trading in the account; and (3) the broker acted with the intent to defraud or with willful and reckless disregard for the investor's interests.

*Miley v. Oppenheimer & Company,* 637 F.2d 318, 324 (5th Cir.1981).

After trial on the merits, the district court found that Romano had failed to establish any one of these three elements. We do not disturb the district court's finding as there is no clear error. The record is noticeably barren of any evidence tending to show excessive trading in Mr. Romano's commodity account in view of his investment objectives. By his own admission, he believed that investing in the silver futures market would be profitable. Mr. Romano testified that he reviewed the silver reports in the newspaper on a daily basis during his period of activity in the market. Guided by this information, he directed the purchase and sale of silver futures. The record reflects that it was Mr. Romano, not his broker, who exercised control over his commodity account. The investment decisions were his; the account was nondiscretionary. Similarly, absolutely no evidence in the record establishes that the broker acted with intent to defraud or in reckless disregard of Mr. Romano's interests. In fact, quite to the contrary, defendants made investment recommendations aimed at recouping Romano's silver losses. Thus, the district court correctly granted the motion to dismiss at trial. Romano simply failed to prove the elements of his case. Dismissal under Federal Rule of Civil Procedure 41(b)[14]

---

**12.** Appearing as *amicus curiae,* the Commodity Futures Trading Commission expressed concern that the district court effectively ruled that the receipt of confirmation slips constitutes notice of churning violations as a matter of law. We do not hold, nor would it be correct to do so, that receipt of confirmation slips and the like constitutes notice as a matter of law. Our decision today is fact-specific and deals only with the facts in this record. The district court also ruled only on the facts.

**13.** The district court generously allowed Romano an additional six months for discovery before definitively ruling on the prescription claim.

**14.** Rule 41(b) provides in relevant part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

Fed.R.Civ.P. 41(b).

is warranted when the district court, even before hearing the defendant's evidence, determines that the plaintiff has failed to offer persuasive evidence regarding the necessary elements of his case.

*DuPont v. Southern National Bank of Houston, Texas,* 771 F.2d 874, 879 (5th Cir.1985), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986).

## D.  NO EVIDENCE OF BREACH OF FIDUCIARY DUTY

▉ Appellant asserted that Merrill Lynch breached its fiduciary duty by failing to disclose its own activity in the silver futures market.  Although the district court held that defendants owed Romano no fiduciary duty, we hold that a broker does owe his client a fiduciary duty, but, on these facts, no duty was breached.

▉ It is clear that the nature of the fiduciary duty owed will vary, depending on the relationship between the broker and the investor.  Such determination is necessarily particularly fact-based.  And although courts draw no bright-line distinction between the fiduciary duty owed customers regarding discretionary as opposed to nondiscretionary accounts, the nature of the account is a factor to be considered:

> ... the CFTC has stated that the duty to disclose information about risk will vary depending on the circumstances and the nature of the relationship between the broker and the customer....

*Clayton Brokerage Company v. Commodity Futures Trading Commission,* 794 F.2d 573, 582 (11th Cir.1986).  The evaluation "requires consideration of the degree of trust placed in the broker and the intelligence and personality of the customer." *Id.*

We have already noted that Mr. Romano controlled his commodity account.  His broker had no authority to make independent investment decisions, but instead acted solely at Romano's direction.  Mr. Romano was an alert and vigilant businessman who daily received and assessed the silver futures market.  Because of Mr. Romano's control over his nondiscretionary account

and his ability to make investment decisions, we find that defendants did not breach the fiduciary duty they owed.  *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 337 F.Supp. 107, 113 (N.D.Ala. 1971), *aff'd.,* 453 F.2d 417 (5th Cir.1972).  *See also Hill v. Bache Halsey Stuart Shields, Inc.,* 790 F.2d 817, 824 (10th Cir. 1986).  *See generally Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith,* 732 F.2d 859, 862 (11th Cir.1984); *Shearson Hayden Stone, Inc. v. Leach,* 583 F.2d 367, 371–72 (7th Cir.1978).

## E.  DENIAL OF CLASS CERTIFICATION

▉ Federal Rule of Civil Procedure 23(a) sets forth the requirements for class certification:

> One or more member of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

Romano again failed on all counts.  Mr. Romano defined potential members of the class as those Merrill Lynch customers whose funds were placed in Ready Assets Trust without authority, pending investment by Merrill Lynch in the commodities market.  However, he could not identify a single customer fitting that class description.  Clearly, neither questions of fact nor defenses would be common to the class.  Given the nature of the claim, adjudication would require a highly specialized inquiry into the relationship between each customer and his account executive, and an examination of the individual investment objectives of the client.  Appellant could not fairly and adequately protect the class for two reasons: He could show no loss resulting from the Ready Assets transactions, and many class members would, as the district court felt, prefer to realize a return

on their fund prior to investment. Romano relied only on rank speculation and conclusory assertions to support his claim to class relief, and the district court properly denied class certification.

Thus, we AFFIRM the district court.