852 F.2d 516
 Blue Sky L. Rep. P 72,732
Farhad F. EBRAHIMI and Mary Patricia Ebrahimi, individually,
and Farhad F. Ebrahimi as Assignee for Farroch and Hannelore
Ebrahimi, Rokhsareh Zia Ebrahimi, and Reza G. Tourzani,
Plaintiffs-Appellees and Cross-Appellants,
v.
E.F. HUTTON & CO., INC. and John Baker,
Defendants-Appellants and Cross- Appellees.
 Nos. 85-2795, 85-2832.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 2, 1988.
 
 Charles F. Brega (David W. Stark, Penny Rodeen Bertelsen, and William L. Johnson with him on the brief), of Roath & Brega, Denver, Colo., for plaintiffs-appellees and cross-appellants.
 Philip A. Harley of Sterling & Miller, P.C., Denver, Colo., for defendants-appellants and cross-appellees.
 Before LOGAN and BALDOCK, Circuit Judges, and PHILLIPS*, District Judge.
 BALDOCK, Circuit Judge.
 
 
 1
 This action was brought by plaintiffs-appellees Farhad F. Ebrahimi (Ebrahimi) and Mary Patricia Ebrahimi (wife), individually, and Farhad F. Ebrahimi as assignee for Farroch and Hannelore Ebrahimi (brother and sister-in-law), Rokhsareh Zia Ebrahimi (mother), and Reza G. Tourzani (friend) pursuant to the Commodity Exchange Act (CEA), 7 U.S.C. Sec. 6b,[1] for excessive trading, unauthorized trading, and trade misappropriation by defendant-appellant John Baker (Baker) in connection with the handling of plaintiffs' commodities investment accounts. Baker was a broker at defendant-appellant E.F. Hutton & Co., Inc. (Hutton) at the time of the transactions at issue.
 
 
 2
 In September 1978, Ebrahimi and his wife opened an account with Hutton valued at approximately $200,000, and his mother opened an account with Hutton valued at approximately $600,000. The mother executed a power of attorney giving Ebrahimi trading authority over her accounts. Baker served as the account executive on both accounts. In that same month, the brother and the sister-in-law opened stock and commodities accounts at Hutton, with Baker as the account executive, and granted Ebrahimi power of attorney over trading in these accounts, which were valued at approximately $60,000. In October 1979, the friend opened an account with Baker at Hutton for approximately $200,000 and executed a power of attorney giving Ebrahimi trading authority over this account.
 
 
 3
 Pursuant to his powers of attorney between 1978 and 1979, Ebrahimi received all confirmation slips for trades and monthly statements reflecting activity in his commodity accounts, the mother's accounts, the brother's accounts, and the friend's accounts. The friend also had monthly account statements sent to his own home. During this period, the Shah of Iran was deposed, and Ebrahimi became worried about his relatives living in Iran who were members of a religious minority not aligned with the emerging Khomeini faction.
 
 
 4
 By May 1979, nearly all assets in all four accounts were invested in financial futures commodities. It is unclear whether the transactions were approved by Ebrahimi. In the second week of July 1979, the accounts of Ebrahimi, the mother, and the friend incurred large losses. Hutton made a margin call on Ebrahimi during the second week of July 1979 which Ebrahimi did not meet. On July 13, 1979, Ebrahimi decided to liquidate the accounts to bring the accounts into compliance with the margin requirements. That same day, Ebrahimi instructed Baker as to which accounts to liquidate. The accounts of Ebrahimi and the mother were not liquidated until two or three days later. The brother's account was not liquidated for over two weeks, and the friend's account was not liquidated until September 1979, when the friend himself directed Baker to liquidate the account. After the liquidation, the mother's account had a deficiency balance of approximately $250,000, Ebrahimi's account had a deficiency balance of approximately $75,570, the brother's account had a gain of approximately $40,751, and the friend's commodity account had a deficiency balance of $239,874.
 
 
 5
 Because all of the accounts had been cross-collateralized and each person had guaranteed the accounts of the others, Ebrahimi used the funds in the brother's account to repay some of the deficiency in the mother's account. Hutton demanded payment of the remaining deficiency in the mother's account. To do so, Ebrahimi executed a note and a deed of trust on his home.
 
 
 6
 The complaint was filed on February 16, 1984, basically alleging churning of the accounts. Both parties agree that the time period between the transactions at issue and the filing of the complaint exceeds three years. In a motion for partial summary judgment, the defendants-appellants asserted that the Sec. 6b claim was barred by the statute of limitations. Ebrahimi countered that the statute of limitations had not run, but rather was tolled due to his mental illness during the period that he was receiving the financial statements from Hutton regarding the accounts. He asserted that the activities of Ayatollah Khomeini in Iran threatened the safety of his relatives living there, which caused him to become mentally ill and unable to discover the fraud perpetrated by the defendants.
 
 
 7
 At trial, the jury found for the plaintiffs-appellees only on the theory of unauthorized trading. Based on jury instructions proposed by Hutton and Baker, the court instructed the jury on the suspension of the statute of limitations,[2] equitable estoppel and laches. After the trial, Hutton and Baker filed a motion for judgment notwithstanding the verdict and a motion to amend the verdict. Both were denied.
 
 
 8
 Hutton and Baker appeal the jury verdict on several grounds. First, they contend that the plaintiffs' claims were barred by the statute of limitations because Ebrahimi failed to exercise due diligence which would have led to his discovery of the alleged fraud within the three-year statute of limitations period. Second, they assert that the trial court erred in admitting testimony and instructing the jury on Ebrahimi's mental state because mental incapacity could not delay running of the limitations period under the federal equitable tolling doctrine. Third, they maintain that there is insufficient evidence to support the verdict against Hutton and Baker on the unauthorized trading claim. Fourth, they propose that the trial court improperly allowed double recovery for the plaintiffs, contrary to the court's jury instructions, by entering separate judgments against Baker and Hutton. Finally, they claim that there was insufficient evidence to support the judgment in favor of Ebrahimi as assignee of the brother and the sister-in-law.
 
 
 9
 In the cross-appeal, Ebrahimi asserts that the trial court erred (1) as a matter of law in precluding plaintiffs' claim for punitive damages, (2) in denying plaintiffs' request for prejudgment interest, and (3) in giving a jury instruction regarding the defense of laches. Due to our disposition, we address only the first two issues raised by the defendants on appeal dealing with the statute of limitations.
 
 
 10
 The threshold issue in this case is whether Ebrahimi is precluded from asserting his claims due to the statute of limitations. To determine whether the statute of limitations has run, we first must determine whether federal or state law supplies the limitations period in a CEA case. To do so, the court must examine the federal statute that forms the basis of the cause of action. Where the federal statute upon which the claim is based does not specify a limitations period, the court looks to the analogous state statute of limitations unless it is inconsistent with federal law or with the policy which the federal law seeks to implement. See Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 1941-42, 85 L.Ed.2d 254 (1985); Board of Regents of the Univ. of the State of New York v. Tomanio, 446 U.S. 478, 484, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980); Pike v. City of Mission, Kansas, 731 F.2d 655, 658 (10th Cir.1984).
 
 
 11
 In this case, application of the Colorado statute of limitations does not contravene the congressional policy underlying the CEA. The CEA does not specify a statute of limitations for a violation of Sec. 6b, the antifraud provision of the Act. Nor does the case law discuss the statute of limitations period applicable to a Sec. 6b action. The federal law most closely analogous to the antifraud provision of the CEA is Sec. 10(b) of the Securities Exchange Act of 1934. See Leist v. Simplot, 638 F.2d 283, 298 n. 14 (2d Cir.1980), aff'd sub nom. Merrill Lynch, Pierce, Fenner, & Smith Inc. v. Curran, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). Like Sec. 4b of the CEA, Sec. 10(b) does not have a specific period of limitations. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976). Consequently, we must examine the most closely analogous Colorado statute of limitations to determine the applicable statute of limitations. See id.; Sentry Corp. v. Harris, 802 F.2d 229, 233 (7th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1624, 94 L.Ed.2d 199 (1987) (noting that state law is applied only when there is no valid federal law directly governing the issue); Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1041 (10th Cir.1980).
 
 
 12
 When borrowing a state statute of limitations, a court should look to the statute which most clearly addresses the same or similar policy considerations as those underlying the federal right. O'Hara v. Kovens, 625 F.2d 15, 18 (4th Cir.1980), cert. denied, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981). The state statute need not operate in the same fashion as the federal statute nor need the state statute describe a cause of action identical to the federal cause at issue. Id. "There simply must be a commonality of purpose between the federal right and the state statutory scheme so that it is reasonable to subject the federal implied right to the statute of limitations provided by state law." Id.
 
 
 13
 Colorado has not enacted state commodities legislation; thus, its courts have not addressed which statute of limitations is applicable in that context. When considering violations of Sec. 10(b) of the Securities Exchange Act of 1934, however, this court generally has applied the three-year limitations period for general fraud pursuant to Colo.Rev.Stat. Sec. 13-80-101(1)(c) (1987),[3] rather than the antifraud provision of the state blue sky laws.[4] Ohio v. Peterson, Lowry, Rall, Barber & Ross, 651 F.2d 687, 691 (10th Cir.), cert. denied, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981); deHaas v. Empire Petroleum Co., 435 F.2d 1223, 1225 (10th Cir.1970); see also Armstrong v. McAlpin, 699 F.2d 79, 86-90 (2d Cir.1983) (applying New York state statute of limitations for general fraud to violation of Rule 10b-5). By analogy to the federal securities cases, we will apply the general statute of limitations pertaining to fraud of three years, Colo.Rev.Stat. Sec. 13-80-101(1)(c) (1987), to cases brought under the CEA.[5] Thus, the limitations period in this case has run, thereby barring the claim, unless Ebrahimi's mental illness tolled or delayed the accrual of the period.
 
 
 14
 The Supreme Court recently has stated that "the length of the limitations period, and closely related questions of tolling and application, are to be governed by state law." Wilson v. Garcia, 471 U.S. at 269, 105 S.Ct. at 1943; accord Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). The instant case, however, does not involve the tolling of the statute of limitations, but with the accrual of the cause of action.[6] Where the cause of action is based upon federal law, this circuit applies federal law to determine questions relating to the accrual of the cause of action. Newcomb v. Ingle, 827 F.2d 675, 678 (10th Cir.1987) (en banc agreement that federal law controls this issue); accord Breen v. Centex Corp., 695 F.2d 907, 910-11 (5th Cir.1983); Holmes v. Bateson, 583 F.2d 542, 561 (1st Cir.1978). But see Suslick v. Rothschild Securities Corp., 741 F.2d 1000, 1004 (7th Cir.1984) (applying the state statutory tolling provision to interpret the federal equitable tolling doctrine); Armstrong v. McAlpin, 699 F.2d at 86 (same); O'Hara v. Kovens, 625 F.2d at 18 (same); Briskin v. Ernst & Ernst, 589 F.2d 1363, 1367 (9th Cir.1978) (same). Thus, whether Ebrahimi's claim is barred because the cause of action had accrued and the statute of limitations period had run is determined under the doctrine of federal equitable tolling. See O'Hara v. Kovens, 473 F.Supp. 1161, 1166 (D.Md.1979), aff'd, 625 F.2d 15 (4th Cir.1980).
 
 
 15
 The federal equitable tolling doctrine, as applied to fraud actions, provides that
 
 
 16
 where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.'
 
 
 17
 Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (quoting Baily v. Glover, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874)); Ohio v. Peterson, Lowry, Rall, Barber & Ross, 651 F.2d at 692. This circuit has interpreted this doctrine to apply to federal question cases in which the state statute of limitations is borrowed. Ohio v. Peterson, Lowry, Rall, Barber & Ross, 651 F.2d at 692; Ramsey v. Culpepper, 738 F.2d 1092, 1096 (10th Cir.1984). The doctrine is implied in every federal statute of limitations where its application is "consistent with congressional intent, and called for by the facts of the case." Bowen v. City of New York, 476 U.S. 467, 479, 106 S.Ct. 2022, 2029, 90 L.Ed.2d 462 (1986).
 
 
 18
 To discern the intent of Congress, we must first look to the statutory language, and then must review the legislative history and other traditional aids of statutory interpretation. Scientex Corp. v. Kay, 689 F.2d 879, 881 (9th Cir.1982). Section 4b of the CEA was enacted by Congress in 1936, after more than sixty years of courts applying the equitable tolling doctrine to federal actions. Had Congress intended to preclude the application of the equitable tolling doctrine to the CEA, it could have enacted a statute of limitations with specific tolling provisions or amended the CEA during the past fifty-three years. See Director, Office of Workers' Compensation Programs v. Perini N. River Assocs., 459 U.S. 297, 319, 103 S.Ct. 634, 648, 74 L.Ed.2d 465 (1983) (legislatures, in enacting or amending statutes, are presumed to know the law). In light of the longstanding validity of the equitable tolling doctrine, its application to a commodities case does not appear inconsistent with the congressional intent underlying the CEA.
 
 
 19
 Moreover, the Supreme Court has recognized that the language of Sec. 6b is similar to that of Sec. 10(b) of the Securities Exchange Act of 1934. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. at 389 n. 88, 102 S.Ct. at 1845 n. 88. Courts have applied the federal equitable tolling doctrine to actions under Rule 10b-5 of the Securities Exchange Act of 1934. See, e.g., Ohio v. Peterson, Lowry, Rall Barber & Ross, 651 F.2d at 692-93; Suslick v. Rothschild Securities Corp., 741 F.2d at 1004; Osterneck v. E.T. Barwick Industries, Inc., 825 F.2d 1521, 1535 (11th Cir.1987). By analogy, we deem that application of the federal equitable tolling doctrine to cases brought under Sec. 4b of the CEA is not inconsistent with the intent underlying the CEA. For the foregoing reasons, we find that the doctrine applies to actions brought under the CEA.
 
 
 20
 Under the doctrine of federal equitable tolling, courts generally have not permitted mental illness, even where rising to the level of insanity, to delay the statute of limitations from running. See, e.g., Casias v. United States, 532 F.2d 1339, 1342 (10th Cir.1976); Accardi v. United States, 435 F.2d 1239, 1241 n. 2 (3d Cir.1970); Williams v. United States, 228 F.2d 129, 132 (4th Cir.1955), cert. denied, 351 U.S. 986, 76 S.Ct. 1054, 100 L.Ed. 1499 (1956). One reason for this rule is that "[i]f the running of the statute of limitations depended on what the particular plaintiff actually knew given his mental or other incapacities, the discovery rule would swallow most of the provisions related to tolling, at least for disabilities that affected cognition and were in existence at the time of the accident." Crawford v. United States, 796 F.2d 924, 927 (7th Cir.1986). We are reluctant to expand the equitable tolling doctrine to include mental incapacity or illness where no court has previously recognized such a tolling factor.[7] Cf. Lopez v. Citibank, 808 F.2d 905, 907 (1st Cir.1987) (noting that where defendant caused the plaintiff's mental disability, courts allow federal equitable estoppel for mental disability); Zeidler v. United States, 601 F.2d 527 (10th Cir.1979) (same). Consequently, we find as a matter of law that the statute of limitations period had run on the Sec. 6b claim because mental illness due to no fault of the defendant could not have delayed running of the statute of limitations.
 
 
 21
 Appellees assert that Ebrahimi's alleged mental illness provides a defense to the running of the limitations period on the claims relating to their accounts. Even assuming that a principal may avail himself of the agent's defense, appellees' claims must be dismissed because the defense asserted by the limited agent, Ebrahimi,[8] is not recognized in this circuit. Thus, we need not decide whether Ebrahimi's alleged mental illness terminated the agency relationship between himself and his friend and relatives. See generally H. Reuschlein & W. Gregory, Handbook on the Law of Agency and Partnership 88 (1979).
 
 
 22
 The trial court, therefore, erred as a matter of law in instructing the jury that mental incapacity suspends the running of the statute of limitations.[9] Consequently, we deem the action barred because it was filed beyond the limitations period of three years.
 
 
 23
 Appellees also assert that Hutton's and Baker's fraudulent concealment delayed accrual of the statute of limitations under the federal equitable tolling doctrine. At trial, appellees sought to prove that they could not have discovered the alleged unauthorized trading, allegedly caused by Baker's manipulation of trading tickets and delay of execution of various trades, because Hutton's Chicago trading records were not readily accessible to them. On the other hand, appellants maintain that federal equitable tolling does not apply to this case because appellees, through reasonable diligence, should have discovered any unauthorized trading. Ohio v. Peterson, Lowry, Rall, Barber & Ross, 651 F.2d at 694 (requirement of diligence). We agree that this is not a case for application of equitable tolling based on fraudulent concealment.
 
 
 24
 Ebrahimi admitted that he received from Hutton monthly statements and confirmation notices on the sales and purchases for all accounts from Hutton. Rec. vol. IV at 368-69. We recognize that monthly statements and confirmation slips that are reviewed by an investor may not provide sufficient notice to apprise him of unauthorized trading. Romano v. Merrill Lynch, Pierce, Fenner & Smith, 834 F.2d 523, 528-29 (5th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988). In this case, however, the statements remained unopened for several years. A reasonable investor under these circumstances would not have completely ignored these statements. See Koke v. Stifel, Nicolaus & Co., 620 F.2d 1340, 1343-44 (8th Cir.1980). These statements contained information which would have alerted the investor, at the very least, that "something may have been amiss." Kennedy v. Josephthal & Co., 814 F.2d 798, 802 (1st Cir.1987). Inquiry notice is triggered by evidence of the possibility of fraud; it does not require full exposition of the fraud itself. Id. To bypass the primary source of information concerning the accounts and then to argue that supplemental information was necessary is to put the cart before the horse.
 
 
 25
 Additionally, appellees claim that Baker breached his fiduciary duty to Ebrahimi, thereby delaying the accrual of the limitations period. Although Baker did have a fiduciary duty to disclose his activities regarding Ebrahimi's accounts, he did not breach this duty because his trading activities were disclosed through the statements. See Romano v. Merrill Lynch, Pierce, Fenner & Smith, 834 F.2d at 530. Moreover, Ebrahimi was a sophisticated investor and exerted significant control over his accounts. Id.
 
 
 26
 Appellees' claims that Ebrahimi did not have sufficient information to put him on inquiry notice and that Baker's fiduciary duty was breached are seriously undercut by Ebrahimi's failure to review the information provided by Hutton and Baker. We need not detail the extent of the unauthorized trading that would have been revealed by simply examining the statements in a timely fashion. Rather, it is enough that the primary source of information in this case disclosed on a regular basis (1) the type of commodity contract purchased or sold, (2) the account involved, (3) the price of each transaction, and (4) the date on which the transaction occurred. The appearance of churning is manifest on the face of the Hutton statements and by the sheer volume of transactions.
 
 
 27
 We emphasize that our holding on the fraudulent concealment issue is a narrow one. The outcome may well have been different had Ebrahimi made some attempt to review the primary source of information provided by Hutton. Because Ebrahimi, a sophisticated investor, was not diligent, we think it would be inequitable to excuse him from compliance with the statute of limitations. Accordingly, the unauthorized trading claim is barred by the statute of limitations.
 
 
 28
 The case is remanded to the district court to vacate the judgment in favor of plaintiffs and to enter judgment in favor of the defendants.
 
 
 29
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Layn R. Phillips, United States District Judge, Western District of Oklahoma, sitting by designation
 
 
 [1]
 Section 4b of the Commodity Exchange Act, codified at 7 U.S.C. Sec. 6b, provides in pertinent part:
 It shall be unlawful (1) for any member of a contract market, or for any correspondent, agent, or employee of any member, in or in connection with any order to make, or the making of, any contract of sale in interstate commerce, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person ... (A) to cheat or defraud or attempt to cheat or defraud such other person; ...
 
 
 [2]
 The judge specifically instructed the jury as follows:
 If you find that a plaintiff, because of his or her diminished mental capacity, was incapable of understanding the essential elements of possible Commodity Exchange Act violations, then you may find that the running of the three-year statute of limitations was suspended for the duration of the mental incapacity.
 Rec. vol. I, doc. 19 at 19.
 
 
 [3]
 Colo.Rev.Stat. Sec. 13-80-101(1)(c) (1987) provides in pertinent part:
 The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within three years after the cause of action accrues, and not thereafter:
 * * *
 (c) All actions for fraud, misrepresentation, concealment, or deceit....
 
 
 [4]
 The comparable Colorado blue sky statute is Colo.Rev.Stat. Sec. 11-51-123 (1987). Although there is no specfic limitations period attached to this section, the three-year statute of limitations is applicable. Ohio v. Peterson, Lowry, Rall, Barber & Ross, 472 F.Supp. 402, 405-06 (D.Colo.1979), aff'd, 651 F.2d 687 (10th Cir.1981)
 
 
 [5]
 Where the state law is applied, it becomes a part of federal law and retains no independent significance. See Wilson v. Garcia, 471 U.S. at 269, 105 S.Ct. at 1943
 
 
 [6]
 Some confusion may be engendered by the general language of various courts in discussing tolling of the statute of limitations and accrual of the cause of action. We use the term tolling to mean "to suspend or stop temporarily as the statute of limitations is tolled during the defendant's absence from the jurisdiction and during the plaintiff's minority." Black's Law Dictionary 1334 (5th ed. 1979). On the other hand, "a cause of action 'accrues' when a suit may be maintained thereon.... The point in time at which a cause of action 'accrues' is important for purposes of running of statute of limitations." Id. at 19. We note, however, that the federal equitable tolling doctrine is at times misnamed because it often provides a rule for determining when the limitations period accrues. See Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (quoting Bailey v. Glover, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874))
 
 
 [7]
 Were we to have considered mental illness to delay the accrual of the cause of action under the federal equitable tolling doctrine, we would have looked to the Uniform Probate Code (UPC) for guidance in this case. The UPC specifies under which circumstances a person is deemed incapable of conducting his or her own affairs. The UPC permits the court to appoint a conservator if
 the Court determines that (i) the person is unable to manage property and business affairs effectively for such reasons as mental illness, mental deficiency, physical illness or disability, advanced age, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance, and (ii) the person has property that will be wasted or dissipated unless property management is provided or money is needed for the support, care, and welfare of the person or those entitled to the person's support and that protection is necessary or desirable to obtain or provide money.
 Unif.Probate Code Sec. 5-401, 8 U.L.A. 478 (1983). Thus, a person would have to be unable to manage property and business affairs effectively due to mental illness for equitable tolling to apply.
 Because the UPC itself does not provide a definition of mental illness for the purpose of appointing a conservator, we would turn to the state statutes which follow the Code. In our review of the caselaw, we find that the most appropriate definition of mental illness to determine accrual of the statute of limitations is the following: "a mentally incompetent person is one who is so affected mentally as to be deprived of sane and normal action or who lacks sufficient capacity to understand in a reasonable manner the nature and effect of the act he is performing." May v. Leneair, 99 Mich.App. 209, 297 N.W.2d 882, 884 (1980).
 Applying this standard, we simply do not find evidence in the record indicating that Ebrahimi was unable to manage property and business affairs effectively due to his alleged mental illness. To the contrary, the record is replete with examples of satisfactory transactions completed by Ebrahimi during the alleged mental illness. For example, he successfully completed the coursework for and passed the examination for his real estate license during the period in question. He also engaged in real estate and other business transactions, traveled extensively on business, and secured large bank loans. Thus, the record does not support the notion that Ebrahimi was so lacking in mental capacity that appointment of a conservator would have been necessary to preserve his property.
 
 
 [8]
 Ebrahimi is a limited agent for his family and friend because he has power of attorney over their accounts
 
 
 [9]
 The decision not to expand the equitable tolling doctrine is supported by policy considerations. "Few areas of the law stand in greater need of firmly defined, easily applied rules than does the subject of periods of limitations." Chardon v. Fumero Soto, 462 U.S. 650, 667, 103 S.Ct. 2611, 2622, 77 L.Ed.2d 74 (1983) (Rehnquist, J., dissenting). In a recent case, the Supreme Court recognized judicial consistency as a policy reason which justified its refusal to impose the doctrine of equitable tolling where the appellant had failed to file an employment discrimination action after court notification. " 'In the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.' " Baldwin County Welcome Center v. Brown, 466 U.S. 147, 153, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980))