**Robert S. DYER, Plaintiff–Appellant,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, Defendant–Appellee.**

No. 90–1078.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1990.

Decided March 27, 1991.

As Amended April 18, 1991.

Virginia B. Fischer, Gordon Dempsey, Sutherlin & Dempsey, Indianapolis, Ind., for plaintiff-appellant.

Anne N. DePrez, Edward O. Delaney, Barnes & Thornburg, Indianapolis, Ind., for defendant-appellee.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

In September 1988, plaintiff Robert S. Dyer filed his first amended complaint against the brokerage firm of Merrill Lynch, Pierce, Fenner & Smith, Incorporated, and Dr. I. Jerome Regenstrief, a Merrill Lynch associate and an ophthalmologist. This pleading was separated into five counts, the latter four alleging violations of state law.

Count I relied on 28 U.S.C. § 1331 for federal question jurisdiction and § 1332 for diversity jurisdiction. Dyer is an Indiana resident and Merrill Lynch, a Delaware corporation, does business in Indianapolis and Carmel, Indiana.[1] In February 1984, Dyer decided to invest in silver futures in the commodities market and met with Dr. Regenstrief to discuss his proposed investment. At that time Dyer signed a Statement of Financial Condition and an Acknowledgment of Separate Risk Disclosure Statements and Customer Agreement. Merrill Lynch and "Commodity Account Executive" Dr. Regenstrief became Dyer's brokers. As such, they were subject to Section 4b of the Commodity Exchange Act, 7 U.S.C. § 6b, which makes it illegal for brokers to cheat, defraud or mislead their clients. Dyer told Dr. Regenstrief

1. Co-defendant Dr. Regenstrief was apparently an Indiana citizen, thus nullifying diversity jurisdiction under 28 U.S.C. § 1332. Nevertheless there was federal question jurisdiction under 28 U.S.C. § 1331.

that he wanted to take positions in the silver futures market to protect himself from inflation. According to the final complaint, by the end of April 1984, Dyer's unrealized losses in that market amounted to $35,520.

Allegedly in response to Merrill Lynch's request, Dyer provided the firm with a financial statement showing a net worth of $709,000, increased to $900,000 according to his June 11, 1984, statement of financial condition. By the end of June, his unrealized losses amounted to $126,293, growing to $309,987 by the end of September 1984.

Dyer charged that his "stated risk capital" was originally $200,000 and was increased to $350,000 in response to Merrill Lynch's request. He and Dr. Regenstrief talked about Dyer's silver investments two to eight times a day on a special phone line. Dyer said he complained to Dr. Regenstrief on September 20, 1984, that short spread positions arranged by him were not providing protection and that Dyer could not sustain the losses, resulting in a repositioning of the spreads by Dr. Regenstrief.

Dr. Regenstrief left Merrill Lynch in February 1985, and Dyer closed his account in May 1985 after losses of $418,994.66 including commissions of $61,020.

Count I of Dyer's first amended complaint concluded by stating that defendants' actions violated § 4b of the Commodity Exchange Act, but no ad damnum was given. Count II was based on the same facts and asserted that defendants had violated the Indiana Securities Act, Ind.Code § 23–2–1–1 et seq. Count III was based on common law fraud, Count IV asserted conversion under Ind.Code § 35–43–4–1, while Count V alleged that defendants breached their fiduciary duty under common law.

In January 1989, defendants moved for summary judgment on all counts of the complaint. The following December, Judge McKinney entered judgment in their favor on the ground that the Count I federal claims were barred by the two-year statute of limitations in 7 U.S.C. § 25(c) or because

they fail to state a claim, thus causing the district court to relinquish jurisdiction over the state law claims in Counts II–V.[2] The judgment was supported by a 20–page opinion. We affirm.

*Two-year statute of limitations governing Dyer's Commodity Exchange Act claims*

Count I of the amended complaint is based on 41 alleged violations of Section 4b of the Commodity Exchange Act (7 U.S.C. § 6b). The two-year statute of limitations contained in Section 22(c) of the Act, 7 U.S.C. § 25(c), applies to such actions. Since this suit was brought on April 20, 1987, any claim arising prior to April 20, 1985, would ordinarily be time-barred.

■ Dyer first asserts that the statute did not begin to run until he closed his account with Merrill Lynch in May 1985. However, it is settled that the closing date is not the proper time to begin the running of the limitations period. Rather, the statute commences to run when the plaintiff, in the exercise of due diligence, has actual or constructive knowledge of the conduct in question. *Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d 523, 528 (5th Cir.1987), certiorari denied, 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883; *Maloley v. R.J. O'Brien & Associates, Inc.*, 819 F.2d 1435, 1439 (8th Cir.1987). *McCarthy v. Painewebber, Inc.*, 618 F.Supp. 933, 937 (N.D.Ill.1985), on which plaintiff relies, does not hold to the contrary because there Judge Shadur held that knowledge of a potential claim triggered a duty of inquiry and started the limitations period running. The proper standard for determining the commencement of the limitations period is when the plaintiff knew or in the exercise of reasonable diligence should have known of defendant's alleged misconduct. *Hupp v. Gray*, 500 F.2d 993, 996–997 (7th Cir. 1974); *Breen v. Centex Corp.*, 695 F.2d 907, 911 (5th Cir.1983).

■ Dyer knew and understood the amount of his losses and the reason for them in the fall of 1984 (paras. 27, 31 of Count I of the first amended complaint).

---

2. Plaintiff does not contest the appropriate dismissal of the pendent state claims under *United* *Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218.

Consequently, the district court was justified in holding that the statute of limitations commenced running at that time. In the court below, Dyer insisted that the statute of limitations could not have run because his account remained open until May 1985. But by not making the point below that a fact dispute exists over the extent of Dyer's knowledge of his claims before then, that argument has been waived. In any event, throughout his deposition, Dyer referred to many events before April 20, 1987, when the statute of limitations began to run, that were sufficient to "arouse[ ] suspicion or curiosity," thus commencing the running of the statute of limitations. *Hupp*, 500 F.2d at 996–997, quoting *Morgan v. Koch*, 419 F.2d 993, 998 (7th Cir.1969). Since he knew or should have known of the alleged misconduct more than two years prior to suit, his Count I claims occurring within two years of the filing of the suit are time-barred.

*Churning*

■ The last part of Count I alleges churning in violation of Section 4b of the Commodity Exchange Act (7 U.S.C. § 6b). Churning is the excessive trading of an account by a broker to generate additional commissions. The two-year statute of limitations bars any churning claim prior to April 20, 1985, but the complaint also involves so-called churning from April 23 to May 10, 1985. In order for Dyer to establish a case of churning, he must show that his broker has control of the account. *Bowley v. Stotler & Co.*, 751 F.2d 641, 644 (3d Cir.1985). Dyer proffered no evidence that Dr. Regenstrief conducted any trades without Dyer's consent. As the district court observed, overwhelming evidence establishes that the trades were made with Dyer's approval and direction. Dyer received monthly statements listing all trades, commissions, profits and losses. Therefore the churning claims contained in the last paragraph of Count I were properly dismissed on their merits.

*Suitability*

■ Several paragraphs of Count I allege Dyer's unsuitability to undertake these trades, discussing aspects of Dyer's mental state, such as temperament, paranoia and undue risk-taking. However, Section 4b of the Commodity Exchange Act does not encompass claims for suitability. *Wasnick v. Refco, Inc.*, 911 F.2d 345, 348 n. 2 (9th Cir.1990) (recognizing that no case law supports this theory); *Puckett v. Rufenacht, Bromagen & Hertz, Inc.*, 903 F.2d 1014, 1020 (5th Cir.1990) (commodities broker has no duty to determine a client's suitability); *Bieganek v. Wilson*, 642 F.Supp. 768, 773 (N.D.Ill.1986) (noting that nothing in legislative history of Act supports recovery under suitability theory); see also *Schofield v. First Commodity Corp.*, 793 F.2d 28, 34 (1st Cir.1986); *Myron v. Hauser*, 673 F.2d 994, 1005–1006 (8th Cir.1982). As the full Commission itself held, "a commodity professional does not violate Section 4b merely because he fails to determine whether a customer is suitable for commodity trading." *Phacelli v. Conti Commodity Services, Inc.*, Comm. Fut.L.Rep. (CCH) ¶ 23,250 at p. 32,674 [1986–87 Transfer Bind.]. The record is devoid of any evidence that Dyer had a psychiatric or other condition preventing him from understanding the risks of commodities speculation which were explained to him by defendants both orally and in writing.

Judgment affirmed.