O.J. HOTMAR and Nellie Hotmar,
Plaintiffs-Appellants,

v.

LOWELL H. LISTROM & COMPANY,
INC. and Joe J. Brown,
Defendants-Appellees.

No. 84–2359.

United States Court of Appeals,
Tenth Circuit.

Jan. 7, 1987.

Susan K. McKee-Pavlica of Curfman, Harris, Stallings & Snow (Brian G. Grace, with her on the brief), Wichita, Kan., for plaintiffs-appellants.

James A. Walker, Triplett, Woolf & Garretson, Wichita, Kan., for defendants-appellees.

Before MOORE, ANDERSON and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

O.J. Hotmar and his wife, Nellie, brought suit against their broker, Joe J. Brown, and his employer, Lowell H. Listrom & Company, alleging churning and a breach of fiduciary duty with respect to their stock portfolio during the period from November 1, 1977, through November 30, 1979. At trial, the plaintiffs called two witnesses, Joe J. Brown, one of the defendants, and O.J. Hotmar, one of the plaintiffs, and rested their case. The defendants then moved for a directed verdict under Fed.R.Civ.P. 50(a). The district court granted this motion, believing that the plaintiffs had failed to make a *prima facie* showing of either churning or breach of fiduciary duty, and entered judgment for the defendants. Plaintiffs appeal. We affirm.

■ "Churning" is defined as "excessive trading by a broker disproportionate to the size of the account involved in order to generate commissions," and is deemed a violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), which prohibits any manipulative or deceptive device in the purchase or sale of any security in interstate commerce. *See Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168 (10th Cir.1974). Under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and S.E.C. Rule 10b–5, a broker may be held liable for violation of federal securities laws once an investor proves that: (1) the trading in his account was excessive in the light of his investment objectives; (2) the broker in question exercised control over the trading in the account; and (3) the broker acted with an intent to defraud or with willful and reckless disregard for the investor's interests. *Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 324 (5th Cir. 1981); *see also, e.g., Tiernan v. Blyth, Eastman, Dillon & Co., Inc.*, 719 F.2d 1 (1st Cir.1983); *Mihara v. Dean Witter & Co.*, 619 F.2d 814, 821 (9th Cir.1980).

As stated, the plaintiffs called only two witnesses, O.J. Hotmar, the investor, and Joe J. Brown, the stockbroker. In his comments from the bench,[9] the district court analyzed their testimony carefully and concluded that plaintiffs had failed to make a *prima facie* case of either churning or breach of fiduciary duty. We are in general accord with the analysis made by the district court.

■ At the outset it should be noted that we are dealing here with a so-called non-discretionary account, i.e., one where the investor must give prior approval to all transactions. In the case of a discretionary account, which is not the present case, the broker has formal discretionary authority to buy and sell stocks, and hence his control is quite clear. However, even though there be a non-discretionary account, the broker may still exercise control over the account. *Mihara v. Dean Witter & Co., Inc.*, 619 F.2d 814, 821 (9th Cir.1980); *Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057 (2d Cir.), *cert. denied*, 434 U.S. 1055, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *Carras v. Burns*, 516 F.2d 251 (4th Cir.1975).

Such control, though not formal, may be inferred from all the facts and circumstances.

■ In the instant case, all transactions were with the prior approval of Hotmar. Although Hotmar sought, and obtained, advice from Brown, it was Hotmar's decision to buy or sell. On many occasions Hotmar followed Brown's advice. On other occasions, Hotmar rejected Brown's advice, and acted on his own evaluation of the matter. Although Hotmar had only a high school education, he had been heavily involved in the stock market for nearly 20 years. He visited with Brown in the latter's offices almost daily. Hotmar's own testimony indicates quite clearly that he was not a babe in the woods, but, on the contrary, was a knowledgeable, if not a wise investor. All things considered, evidence of "control" by Brown over the account is, in our view, lacking.[1]

■ Hotmar also had the burden of proving that trading in his account was excessive. In churning cases, excessive trading is measured in the light of the investor's objectives. *See, e.g., Costello v. Oppenheimer & Co., Inc.*, 711 F.2d 1361, 1368 (7th Cir.1983); *Follansbee v. Davis, Skaggs & Co.*, 681 F.2d 673, 676 (9th Cir. 1982); *Carras v. Burns*, 516 F.2d 251, 258 (4th Cir.1975). Where the goals of the investor are aggressive it is easier to conclude that the trading was not excessive. In the instant case, Hotmar had experienced severe losses in the years preceding the time period with which we are here concerned, i.e., 1977 to 1979, and Hotmar himself testified that he went back in the market prepared to take risks and hopefully recoup his prior losses. Accordingly, he dealt in, and knew he was dealing in, specu-

lative stocks, rather than conservative, blue-chip stocks. A traditional method of showing excessive trading in an account is by presenting an expert who will testify to such items as the "turnover rate" and the "in and out trading" in a particular account. Hotmar called no such expert, and although such does not in itself defeat his claim, he did proceed at some risk by not presenting such type of testimony. *Costello v. Oppenheimer & Co., Inc., supra* at 1369. In sum, we fail to see that the plaintiffs presented any real evidence of excessiveness.

Also, Hotmar had the burden of establishing, *prima facie, scienter* on the part of Brown. Our study of the matter leads us to conclude that Hotmar did not meet this burden of proof either. There is no question that Hotmar received confirmation slips on every transaction and monthly statements detailing the activity in his account. There is also no evidence that Brown withheld information. In fact the evidence tends to show Brown freely shared all his knowledge and information with Hotmar. We fail to perceive any real evidence of deception on the part of Brown. It is quite true that Hotmar suffered substantial losses while Brown was receiving substantial commissions, but such, standing alone, does not establish churning or any of its component elements. We agree with the observation of the district court that Hotmar was taking calculated risks, and now, having lost his money, seeks a scapegoat.

The Hotmars also complain that the district court erred when it sustained objection to proffered testimony bearing on the "Know Your Customer Rule" and the "Suitability Rule."[2] Any possible error in

---

**1.** Plaintiffs' characterization of Brown as an unsophisticated investor in the control of his broker is erroneous. Before the period of alleged churning, Hotmar had owned several businesses and rental property. He had also engaged in high risk trading, including trading on the margin and holding stocks in short positions. During the alleged churning period, Hotmar maintained an intense interest in his account. He conversed with his broker almost daily. He

also read various financial publications and even knew how to use his broker's computer to get updated information on stocks. Hotmar was fully aware at all times of the status of his account and does not claim Brown ever misinformed him at any time. Even after the alleged churning period had ended, Hotmar continued to use Brown as his broker.

**2.** The Know Your Customer Rule is a rule of the New York Stock Exchange requiring members

this regard would, in light of the entire record, be only harmless, since compliance with these Rules is only one factor in determining the excessiveness of the trading, and, in our view, plaintiffs' evidence on all three of the essential elements of churning is lacking.

■ On the plaintiffs' pendant claim, the district court held that, because of the nature of the relationship between Hotmar and Brown, there was insufficient evidence of a fiduciary relationship between the two. The district court noted that there was no evidence that Brown agreed to manage or otherwise control Hotmar's account and that merely rendering advice is not sufficient to establish a fiduciary relationship. All things considered, we are not inclined to disturb that holding of the district court. We do not believe that the district court either misunderstood or misapplied the Kansas law on this matter.[3]

Judgment affirmed.

of the exchange to "use due diligence to learn the essential facts relevant to every customer, every order [and] every cash or margin account accepted or carried by such organization" and to "supervise diligently all accounts handled by registered representatives of the organization...." CCH New York Stock Exchange Guide § 2405. The Suitability Rule of the National Association of Security Dealers requires that members "have reasonable grounds for believing that [their] recommendation [for the purchase or sale of securities] is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other securities holdings and as to his financial situation and needs." NASD Manual, Art. 3, § 2.

3. Under Kansas law the existence of a fiduciary duty depends on the facts and circumstances in each case. *Denison State Bank v. Madeira,* 230 Kan. 684, 640 P.2d 1235 (1982). However, one may not unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary. *Id.* In this case, Brown never agreed to control Hotmars' account. In fact, Brown testified he *never* accepted discretionary accounts. Without an agreement by Brown to monitor the trading in Hotmars' account, no fiduciary duty was imposed on Brown to execute only those orders he considered "suitable" for one in Hotmars' position, and hence, no breach of fiduciary duty was shown.