# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J. Fisher, Jr.                                    Elisabeth A. Shumaker
Clerk                                                     Chief Deputy Clerk

**June 24, 1996**


TO: ALL RECIPIENTS OF THE CAPTIONED OPINION

RE: 95-3005  Arst v. Stifel, Nicolaus
    June 11, 1996 by the Honorable Terry C. Kern


    Please be advised of the following correction to the captioned decision:

    The attorneys were listed incorrectly with respect to parties represented.

    Please replace page one of the opinion with the revised page one which has been included for your convenience.

                    Very truly yours,

                    Patrick Fisher, Clerk



                    Beth Morris
                    Deputy Clerk

encl

FILED 6/11/96

**PUBLISH**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

———————————

RODGER M. ARST,                        )
                                       )
    Plaintiff-Appellant,               )
                                       )
vs.                                    )   No. 95-3005
                                       )
STIFEL, NICOLAUS & COMPANY, INC.,      )
and ODIS E. SHOAF, JR.,                )
                                       )
Defendants-Appellees.                  )

———————————

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 93-1299-PFK)

———————————

Joe Rebein of Shook, Hardy & Bacon, P.C., Kansas City, Missouri,
(Barbara A. Harmon and Brett D. Leopold of Shook, Hardy & Bacon,
P.C. of Overland Park, Kansas, and Kurt A. Harper of Sherwood &
Harper, Wichita, Kansas with him on the brief) for Plaintiff-
Appellant.

Reggie C. Giffin of Morrison & Hecker, Kansas City, Missouri
(John C. Nettels, Jr. of Morrison & Hecker, Wichita, Kansas, and
James A. Walker of Triplett, Woolf & Garretson, L.L.P., Wichita,
Kansas, with him on the brief) for Defendants-Appellees.

———————————

Before BRORBY and McWILLIAMS, Circuit Judges, and KERN, District
Judge.[*]

———————————

KERN, District Judge.

———————————

———————————

[*]The Honorable Terry C. Kern, United States District Judge
for the Northern District of Oklahoma, sitting by designation.

In this appeal we are asked to consider whether the district court properly granted Defendants' motion for summary judgment. Plaintiff-Appellant Rodger M. Arst ("Arst") sued Defendants-Appellees Stifel, Nicolaus & Company, Inc. ("Stifel Co.") and Odis E. Shoaf, Jr. ("Shoaf"), asserting claims under Kansas common law for breach of fiduciary duty and claims under the Kansas Securities Act, Kan. Stat. Ann. § 17-253 (1994), and the Securities Exchange Act of 1934, 15 U.S.C. § 78(j) (1981).  We affirm the District Court's grant of summary judgment in part and reverse in part and remand for further proceedings.

**I.   Facts**.  In 1990, Physician Corporation of America (PCA) engaged Stifel Co. to act as an accommodating broker for PCA shares.  Stifel Co. was to put together buyers and sellers of PCA stock on an unsolicited basis, charging both parties a commission.  Stifel would not make recommendations concerning the stock, nor make a market in the stock.  (Although PCA had originally asked Stifel Co. to serve as a market maker, Stifel Co. had declined.)  PCA advised its shareholders by mail that it had made arrangements with Stifel Co. to accommodate the purchase and sale of PCA stock and that shareholders should contact Odis Shoaf, a senior vice president of Stifel Co., if they wanted to buy or sell shares.  On various occasions since 1990, Mr. Shoaf purchased PCA shares for himself and family without revealing to the shareholders that he was the purchaser.  Stifel Co. had instructed Shoaf not to disclose his purchases to PCA

2

shareholders because Stifel Co. wanted to remain a neutral go-between and was concerned that Shoaf's purchases could be construed as recommendations. Shoaf asserts that he paid the same amount as other buyers of the PCA shares minus his regular commission.

Appellant Arst purchased 37,500 shares of PCA stock for $2.00 in the 1980s, before Stifel Co. was engaged as an accommodating broker. Around August 1992, Arst contemplated selling his PCA shares. Arst called Shoaf on August 17 to inquire about the price of the stock and the market for the shares. Shoaf apparently told Arst some unfavorable facts and opinions about PCA's strength and future as a company. Shoaf did not mention rumors circulating about PCA's plans to go public--rumors that Shoaf apparently had mentioned to other people. There is no evidence that Shoaf was privy to inside information.

On August 18, 1996, Arst authorized Shoaf to sell all of his 37,500 PCA shares at $4.625 per share--the going price. Shoaf sold some of Arst's shares to third parties and, without telling Arst, bought 10,110 shares for himself and his family on August 19. Shoaf testified that at the time Arst commissioned Shoaf to sell the shares, Shoaf did not know whether he or his family would purchase any of the shares. Prior to closing the transaction, Arst signed a nonsolicitation letter that stated that Shoaf had not solicited the sale and that Arst agreed not to hold Stifel Co. or Shoaf responsible for any damages or other liability arising out of the transaction. At the conclusion of

the transaction in August 1992, Stifel Co. sent Arst a confirmation slip that stated the names of the buyers of his shares would be furnished upon written request. At the time of the closing, Arst did not inquire who had bought his shares.

In November 1992, PCA announced its plans to go public. In December, PCA stock split four for three, and in March 1993, PCA made a public offering at $15.25 per share. In April 1993, Arst sent Shoaf and Stifel Co. a written request for the names of the purchasers of his stock. Defendants refused to disclose the names. Arst then filed suit in state court against Stifel Co. and Shoaf, who removed the case to federal court. Defendants ultimately revealed the names of the purchasers of Arst's shares after being compelled by court order.

Arst brought claims against Shoaf and Stifel Co. under Kansas common law for breach of fiduciary duty and claims under the Kansas Securities Act, Kan. Stat. Ann. § 17-253, the Securities Exchange Act of 1934, 15 U.S.C. § 78(j), and SEC Rules 10b-5 and 10b-10(a)(7)(i). Defendants filed a motion for summary judgment. The District Court granted Defendants' motion, holding that SEC Rule 10b-10(a)(7)(i) did not provide a private cause of action and that Defendants did not have the requisite fiduciary duty to support liability under the remainder of Plaintiff's claims. Arst now appeals the district court's order.

## II. Discussion

We review the district court's grant of summary judgment *de novo*, applying the same standard as the district court under Fed.R.Civ.P. 56(c). <u>Universal Money Centers. v. American Tel. & Tel. Co.</u>, 22 F.3d 1527, 1529 (10th Cir.), <u>cert. denied</u>, 115 S.Ct. 655 (1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We examine the factual record and reasonable inferences therefrom in the light most favorable to the nonmoving party. <u>Id.</u> If there is no genuine issue of material fact in dispute, we must determine whether the district court correctly applied the law. <u>Applied Genetics Intern. v. First Affiliated Securities</u>, 912 F.2d 1238, 1241 (10th Cir. 1990).

*A. Cause of Action under Rule 10b-10(a)(7)(i).* Arst brought a claim under SEC Rule 10b-10(a)(7)(i), 17 C.F.R. § 240.10b-10(a)(7)(i), for Defendants' failure to disclose the names of the buyers of his stock. The rule provides in relevant part:

> **Rule 10b-10. Confirmation of Transactions**
> (a) It shall be unlawful for any broker or dealer to effect for or with the account of a customer any transaction in, or to induce the purchase or sale by such customer of, any security . . . unless such broker or dealer, at or before completion of such transaction, gives or sends to such customer written notification disclosing:
> . . .
> (7) If he is acting as agent for such customer, for some other person, or for both such customer and some other person,
> (i) The name of the other person from whom the security was purchased, or to whom it was sold, for such customer or the fact that such information will be furnished upon written request

5

of such customer . . . .

Defendants complied with their initial obligations under the Rule by informing Arst at the completion of the transaction that the names of the buyers of his shares would be furnished upon written request; however, when Arst subsequently made such a written request eight months later, Defendants refused to furnish the names until compelled by court order.

Rule 10b-10(a)(7)(i), which was promulgated by the SEC pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j), does not expressly provide for a private cause of action for a violation of its terms.  "Absent an express grant of a private cause of action, a mere proscription of behavior does not justify an inference of a private cause of action for its violation; instead, there must be some evidence that Congress intended one."  Coosewoon v. Meridian Oil Co., 25 F.3d 920, 929 (10th Cir. 1994) (interpreting the Federal Oil and Gas Royalty Management Act) (quoting Pullman v. Chorney, 712 F.2d 447, 449 (10th Cir. 1983)) (citing Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11 (1979)).  The Supreme Court has stated that in determining the scope of conduct prohibited by § 10(b) of the Exchange Act, the statute under which Rule 10b-10(a)(7)(i) was promulgated, the text of the statute controls the court's decision.  Central Bank v. First Interstate Bank, 114 S. Ct. 1439, 1446 (1994).  The Court admonished that although a private plaintiff may bring suit against violators of § 10(b), a private plaintiff may not bring a suit under an SEC regulation

promulgated pursuant to § 10(b) for acts not prohibited by the text of § 10(b). Id. The Court explained, "To the contrary, our cases considering the scope of conduct prohibited by § 10(b) in private suits have emphasized adherence to the statutory language, 'the starting point in every case involving construction of a statute.'" Id. (citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 197 (1976)).

In the instant case, the critical language in § 10(b) is "in connection with." Section 10(b) makes it unlawful for any person

> (b) To use or employ, *in connection with* the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78(j)(b) (1981) (emphasis added).

This court has construed "in connection with" to require a causal connection between the allegedly deceptive act or omission and the alleged injury. See Westinghouse Credit Corp. v. Bader & Dufty, 627 F.2d 221, 223 (10th Cir. 1980); Vincent v. Moench, 473 F.2d 430, 435 (10th Cir. 1973).[2] See also Angelastro v. Prudential-Bache Securities, 764 F.2d 939, 942, 944 (3rd Cir.) (finding an implied private cause of action under Rule 10b-16 and noting that the Third Circuit has construed § 10(b) as mandating that there be some causal connection between the alleged fraud

---

[2] Although both of these cases involved suits for equitable relief, the requirement for a causal connection applies with equal force when, as here, the suit is for money damages.

7

and the harm incurred when the security is purchased or sold), cert. denied, 474 U.S. 935 (1985); Liberty National Insurance Holding Co. v. Charter Co., 734 F.2d 545, 555 (11th Cir. 1984) (noting that the "in connection with" element requires a causal relationship between the claimed deception and a subsequent purchase or sale).

In the instant case, there is no such causal relationship between the alleged deception by Defendants and any harm incurred from the sale of Arst's shares. The allegedly deceptive practice prohibited by Rule 10b-10(a)(7)(i)--Defendants' failure to reveal the buyers' names--occurred *after* the sale. Since Defendants' allegedly deceptive conduct could not have had an impact on Arst's decision to sell his shares, Defendants' conduct was not "in connection with" the purchase or sale of a security § 10(b). In other words, while Defendants' conduct was proscribed by the Rule, it was not prohibited by the statute. Therefore, Defendants' failure to disclose the names of the purchasers of Arst's shares *after* the closing of the transaction did not give rise to a private cause of action.

*B. Alleged breach of fiduciary duty*. Arst claims that Defendants breached their fiduciary duties to Arst in two respects: first, by failing to disclose that Shoaf was buying Arst's shares on Shoaf's account; and second, by failing to provide Arst complete and accurate information about PCA prior to the closing of the transaction. Arst contends that Shoaf and Stifel Co., as fiduciaries, had a common law duty to disclose

8

this information; therefore, their failure to disclose constituted a breach of their fiduciary duty. Since there was no express fiduciary relationship between Defendants and Arst,[3] any fiduciary duty must arise under an implied-in-law fiduciary relationship. See Rajala v. Allied Corp., 919 F.2d 610, 614 (10th Cir. 1990) (citing Denison State Bank v. Madeira, 640 P.2d 1235, 1241 (Kan. 1982)), cert. denied, 500 U.S. 905 (1991). We will first address Defendants' alleged breach for failure to disclose self-dealing and then address their alleged breach for failure to disclose information about PCA.

1. *Duty to disclose self-dealing*. Any state law fiduciary duty of Defendants arose from their agency relationship with Arst. See Hill v. Bache Halsey Stuart Shields, Inc., 790 F.2d 817, 824 (10th Cir. 1986) (applying Colorado law). Shoaf, on behalf of Stifel Co., was Arst's agent for the purpose of conducting the sale Arst ordered. As an agent, Shoaf was a fiduciary 'with respect to matters within the scope of [the] agency.'" Id. (citing Restatement (Second) of Agency § 13 (1958)). See also Henderson v. Hassur, 594 P.2d 650, 658 (Kan. 1979) ("The relationship existing between a principal and agent is a fiduciary one . . . .")(citing Merchant v. Foreman, 322 P.2d

---

[3] PCA notified its shareholders in writing that Stifel Co. would be serving as an accommodating broker. We do not construe this communication as establishing an express contractual fiduciary relationship between Defendants and PCA shareholders. See Rajala v. Allied Corp., 919 F.2d 610, 614 (10th Cir. 1990) (delineating instances in which a fiduciary relationship is specifically created by contract or formal legal proceeding), cert. denied, 500 U.S. 905 (1991).

740, 745 (Kan. 1958)).

To be sure, the scope of Shoaf's agency, and his attendant fiduciary duties, were limited. Shoaf had nondiscretionary authority in the sale of Arst's shares: he was to sell the specified amount of shares at the agreed-upon price. Therefore, the fiduciary duty Shoaf owed Arst was to carry out the ordered sale with due care and loyalty and not to make unauthorized sales. See Hill, 790 F.2d at 824-25.[4] See also Merchant v. Foreman, 322 P.2d 740, 745 (Kan. 1958) ("[I]n all transactions concerning and affecting the subject matter of his agency, it is the duty of the agent to act with the utmost good faith and loyalty for the furtherance and advancement of the interests of his principal") (citations omitted).

Arst's claim of self-dealing implicates Shoaf's duty of loyalty as a fiduciary. Under Kansas law of agency, when Shoaf decided to purchase on his own account the subject matter of the agency--i.e., Arst's PCA shares--Shoaf had the duty to disclose

---

[4] Our holding that Shoaf had a limited fiduciary relationship with Arst is not at odds with our holding in Hotmar v. Lowell H. Listrom & Co., 808 F.2d 1384 (10th Cir. 1987). That case involved a claim by an investor that his broker had breached fiduciary duties with respect to a nondiscretionary account. We noted that under Kansas law the existence of a fiduciary duty depends on the facts and circumstances in each case. We held that in the absence of an agreement by the broker to control the account, the broker did not have a fiduciary duty "to execute only those orders he considered 'suitable' for one in [the investor's] position, and hence, no breach of fiduciary duty was shown." Id. at 1387 n.3. In the instant case, we hold that Shoaf had a far narrower fiduciary duty than claimed in Hotmar. Shoaf, as agent, had a fiduciary duty to carry out the requested sale with due care and loyalty to the principal.

10

this purchase to Arst. The Kansas Supreme Court notes, "[W]here a fiduciary relationship is established between [a principal and agent] the law views with suspicion and scrutinizes very closely all dealings between them in the subject matter of the agency to see that the agent has dealt with the utmost good faith and fairness." Merchant, 322 P.2d at 745 (citations omitted). Section 389 of the Second Restatement of Agency establishes an agent's duty to disclose self-dealing. "Unless otherwise agreed, an agent is subject to a duty not to deal with his principal as an adverse party in a transaction connected with his agency without the principal's knowledge." Although the Kansas Supreme Court did not explicitly adopt this section of the Restatement in Merchant, it did cite § 390 (dealing with the duties of an agent acting on his own account) which encompasses § 389. Specifically, the Kansas Supreme Court cited the following comment to § 390 of the Restatement, which cross-references § 389: "Hence, the disclosure [by the agent to the principal] must include *not only the fact that the agent is acting on his own account*, but also all other facts which he should realize have or are likely to have a bearing upon the desirability of the transaction, from the viewpoint of the principal." Restatement (Second) of Agency § 390 cmt. a (1958). (emphasis added). Therefore, Shoaf's duty of loyalty as an agent included a duty to disclose his purchases of the PCA shares on his own account. See also Reuschlein & Gregory, The Law of Agency & Partnership (2nd ed. 1990) § 67 at 126 ("An agent must disclose to his principal

11

that he is the purchaser of property from the principal.").

Defendants contend that they are not subject to the terms or rationale of this rule because Shoaf did not deal with Arst as an adverse party. Defendants assert that the price was externally set: the procedures set up by Stifel Co. and allegedly followed by Shoaf were that Shoaf would pay the same price as the other buyers. Therefore, they argue, there was no possibility of a conflict of interests.

The Restatement anticipates this type of argument and explains that even under these circumstances the agent has a duty to disclose purchases on his own account.

> [I]n the absence of a known custom or an agreement, an agent employed to sell at the market price cannot, without disclosure to the principal, properly buy the goods on his own account, even though he pays a higher price for them than the principal could obtain elsewhere. . . . Likewise, ordinarily, an agent appointed to buy or to sell at a fixed price violates his duty to the principal if, without the principal's acquiescence, he buys from or sells the specified article to himself at the specified price, even though it is impossible to obtain more or as much.

Restatement (Second) of Agency § 389 cmt. c (1958). We hold that irrespective of Shoaf's control over the price he paid for the shares, he had a duty to disclose purchases on his own account. His failure to so disclose therefore constituted a breach of his fiduciary duty under Kansas law, and he was not properly entitled to summary judgment in his favor as to this claim.

*2. Duty to give investment advice*. Arst contends that in addition to a duty to disclose self-dealing, Defendants had a duty to give Arst advice about the transaction, including the

12

prospects of PCA making a public offering.  Arst argues that Shoaf assumed this broader fiduciary duty by dispensing his opinion regarding the strength and future of PCA.  The district court held that Defendants had no such duty.  We agree with the district court.

In Rajala v. Allied Corp., 919 F.2d 610 (10th Cir. 1990), we analyzed the requirements under Kansas law of an implied fiduciary relationship.  While the existence of an implied fiduciary relationship "depends on the facts and circumstances of each individual case," id. at 614, the Supreme Court of Kansas has prescribed certain broad principles in making such a determination:

> A fiduciary relationship imparts a position of peculiar confidence placed by one individual in another.  A fiduciary is a person with a duty to act primarily for the benefit of another.  A fiduciary is in a position to have and exercise, and does have and exercise influence over another.  A fiduciary relationship implies a condition of superiority of one of the parties over the other.  Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary.

Id. at 614 (quoting Denison State Bank v. Madeira, 640 P.2d 1235, 1241 (1982)).  Each of the general considerations listed in Denison need not be present in every case in which a fiduciary relationship is alleged.  Rajala, 919 F.2d at 614.

The Kansas Supreme Court has emphasized that "the overriding consideration in the law of fiduciary relationships [is] that 'one may not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one

13

sought to be held liable as a fiduciary.'" <u>Rajala</u>, 919 F.2d at 614 (quoting <u>Denison</u>, 640 P.2d at 1243-44). We have held that "conscious assumption of the alleged fiduciary duty is a mandatory element under Kansas Law." <u>Rajala</u>, 919 F.2d at 615. Under Kansas law a party seeking to establish the existence of a fiduciary relationship must prove it by clear and convincing evidence. <u>Id.</u> (citing <u>Wolf v. Brungardt</u>, 524 P.2d 726, 736 (Kan. 1974)).

Arst has not met this burden of proof. Shoaf held himself out strictly as a go-between: matching sellers and buyers of PCA stock. (Shoaf and Stifel Co. refused to act as market maker, which would have implicated broader fiduciary duties.) That Shoaf made some comments concerning the strength and prospects of PCA is not sufficient to prove that Shoaf consciously assumed a broader fiduciary relationship beyond that of an accommodating broker.[5] Arst could not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on Shoaf to dispense complete and accurate investment advice concerning the PCA stock without a conscious assumption of such duties by Shoaf. <u>Denison</u>, 640 P.2d at 1243-44. <u>See also</u> <u>Hotmar v. Lowell H. Listrom & Co.</u>, 808 F.2d 1384,

---

[5] Referring to the principles enumerated in <u>Denison</u> to establish an implied fiduciary relationship, the relationship between Arst and Defendants most closely resembles the last one: when the property of one party is placed in the charge of another. As we explained, Shoaf's authority over this property was nondiscretionary; therefore, his fiduciary duty was limited to executing Arst's orders concerning the disposition of this property with due care and loyalty.

14

1387 & n.3 (10th Cir. 1987). Indeed, Arst was well aware that Shoaf and Stifel Co. were acting as agents for both buyers and sellers of PCA stock. Arst was "fully competent and able to protect his own interests." Denison, 640 P.2d at 1243-44. As the District Court found, Arst was an experienced businessman who had made previous investments. He had a broker, other than Shoaf, with whom he could have discussed his decision to sell the PCA stock. Arst v. Stifel Nicolaus & Co., 871 F. Supp. 1370, 1384 (D.Kan. 1994). Upon an examination of the record, viewing all factual disputes in favor of the nonmoving party, White v. General Motors Corp., 908 F.2d 669, 670 (10th Cir. 1990), cert. denied, 498 U.S. 1069 (1991), we find no evidence to support Arst's claim that Shoaf consciously assumed a fiduciary duty to dispense accurate and complete investment advice. Therefore, his failure to dispense such information did not constitute a breach of a fiduciary duty.

C. *SEC Rule 10b-5 and Kan. Stat. Ann. § 17-1253*. Arst alleges that Shoaf's failure to disclose self-dealing and failure to advise Arst about the prospects of a public offering also constituted violations of Rule 10b-5, 17 C.F.R. 240-10b-5, and "the Kansas Securities Act, and specifically K.S.A. § 17-1253." (Amend. Compl. ¶ 12.). Rule 10b-5 provides in pertinent part:

It shall be unlawful for any person, directly . . .
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice or course of business

15

which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.[6]

It is well established that Rule 10b-5 provides a private cause of action. <u>Central Bank v. First Interstate Bank</u>, 114 S. Ct. 1439, 1445-46 (1994). We have explained the elements of liability under this rule as follows:

> In order to establish primary liability under § 10(b), a party must allege and prove facts showing that the conduct complained of occurred 'in connection with' the purchase or sale of a security--that the actor made an untrue statement of a material fact, or failed to state a material fact, that in so doing, the party acted knowingly and with intent to deceive or defraud, and that plaintiff relied on the misrepresentations, and sustained damages as a proximate result of the misrepresentation.

<u>Farlow v. Peat Marwick, Mitchell & Co.</u>, 956 F.2d 982, 986 (10th Cir. 1992). In regards to a 10b-5 claim alleging a failure to disclose information,[7] we explained,

---

[6] The language of Kan. Stat. Ann. 17-1253(a) closely tracks that of Rule 10b-5. Section 17-1253(a) provides,

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly, to:
> (1) Employ any device, scheme or artifice to defraud;
> (2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
> (3) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

Since Plaintiff makes no particularized claim under the Kansas Securities Act, we will evaluate that claim under the same elements as its federal counterpart. <u>See</u> <u>Comeau v. Rupp</u>., 810 F. Supp. 1127, 1157 (D. Kan. 1992) (observing the closeness in language and requisite elements between § 17-1253(a) and Rule 10b-5).

[7] Plaintiff did not argue in his appellate brief or at oral
(continued...)

16

The failure to disclose material information is actionable only when one is under a duty to do so. And the duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them. A duty arises from the relationship between the parties not merely because one party has an ability to acquire information. Without a duty to disclose, silence cannot be made fraudulent.

Windon Third Oil and Gas v. Federal Deposit Ins., 805 F.2d 342, 347 (10th Cir. 1986) (citing Chiarella v. United States, 445 U.S. 222, 228, 231 n. 14 (1980)). See also Dirks v. SEC, 463 U.S. 646, 655 (1983) (holding that a duty to disclose "arises . . . from the existence of a fiduciary relationship.").

For the reasons discussed above, Shoaf had no duty to disclose information about the strength and prospects of PCA stock, including the possibility of a public offering. Therefore, his failure to disclose this information does not support liability under either federal or state securities statutes. And there is no evidence in the record that Shoaf was privy to inside information that he might have been obligated to disclose. However, as we explained above, Shoaf did have a duty to disclose the fact that he purchased the shares on his own account. This failure alone does not establish liability under

[7](...continued)
argument that Defendants had made *misrepresentations* in violation of Rule 10b-5; plaintiff argued only that defendants *failed to disclose* information in violation of that rule. Therefore, we conclude that Plaintiff has waived the former issue. See Abercrombie v. City of Catoosa, Okla., 896 F.2d 1228, 1231 (10th Cir. 1990); Jordan v. Bowen, 808 F.2d 733, 736 (10th Cir.), cert. denied, 484 U.S. 925 (1987); Bledsoe v. Garcia, 742 F.2d 1237, 1244 (10th Cir. 1984).

17

Rule 10b-5, but in light of the record, the remaining elements for liability under Rule 10b-5--including scienter, materiality, and causation--present genuine issues of material fact for a jury.  Therefore, Arst has presented facts sufficient to withstand summary judgment with respect to his claim that Defendants' failure to disclose self-dealing violated federal and state securities laws.

**IV.   Conclusion.**

In sum, we hold as follows: (1) Plaintiff does not have a cause of action under Rule 10b-10(a)(7)(i); (2) Plaintiff has presented facts sufficient to withstand summary judgment as to his claims under Kansas common law and state and federal securities statutes alleging Defendants' failure to disclose self-dealing; and (3) Plaintiff has not presented facts sufficient to withstand summary judgment as to his claims under Kansas common law and state and federal securities statutes alleging Defendants' failure to dispense investment advice.  We therefore AFFIRM the judgment of the United States District Court for the District of Kansas in part and REVERSE in part and REMAND this case for further proceedings in accordance with this opinion.